IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ESSEX INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 10-0511-WS-M |
| | ) | |
| MICHAEL E. FOLEY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This matter comes before the Court on the Motion to Stay Proceedings (doc. 14) filed by defendant Water's Edge, LLC. The Motion has been briefed and is ripe for disposition.

**I.    Background.**

The underpinnings of this insurance coverage declaratory judgment action lie in a personal injury lawsuit filed in the Circuit Court of Baldwin County, Alabama (the "Underlying Action") back on April 1, 2010. In the Underlying Action, Michael Edward Foley ("Foley") and his wife sued Water's Edge, LLC and certain other defendants for negligently or wantonly building a makeshift plywood ramp linking Tacky Jack's restaurant to its parking lot. According to the complaint in the Underlying Action, Foley, an employee of Tacky Jack's, sustained a shattered femur and other injuries when he slipped and fell while utilizing the ramp. Essex Insurance Company is not a party to and has never been joined in the Underlying Action, which is set for trial in state court in March 2011.

On September 15, 2010, Essex Insurance Company filed its Complaint for Declaratory Relief in this District Court against Foley, Foley's wife, and Water's Edge. The Complaint alleges that a coverage dispute has arisen concerning whether Essex owes any duty to defend or to indemnify Water's Edge based on a commercial liability insurance policy (the "Policy") that it issued to Water's Edge for the time period in question. As articulated in the Complaint, Essex's position is that the Underlying Action does not involve the kinds of activities by Water's Edge that are described in the Policy's Declaration Page, such that coverage is negated pursuant to the Classification Limitation Endorsement. The Complaint further alleges that there can be no coverage or duty to defend under the Policy because Water's Edge's insurance application is

devoid of reference to the type of construction/renovation activities for which Foley seeks to hold it liable in the Underlying Action.

Water's Edge has now moved to stay this action pending resolution of the Underlying Action pursuant to the abstention principles set forth in *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005). Essex opposes the Motion.

## II.     *Wilton/Brillhart* Abstention.

It is well-settled that the Declaratory Judgment Act is properly "understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). Indeed, the Supreme Court has "repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 287 (citations omitted). As the Eleventh Circuit has observed, the Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." *Ameritas*, 411 F.3d at 1330; *see also Prudential Ins. Co. of America v. Doe*, 140 F.3d 785, 789 (8th Cir. 1998) ("The Supreme Court's decision in *Wilton* ... vests the district courts with broad discretion in deciding whether to hear a declaratory judgment action."). "The desire of insurance companies ... to receive declarations in federal court on matters of purely state law has no special call on the federal forum." *Westchester Surplus Lines Ins. Co. v. Romar House Ass'n, Inc.*, 2008 WL 5412937, *2 (S.D. Ala. Dec. 29, 2008) (quoting *State Auto Ins. Companies v. Summy*, 234 F.3d 131, 136 (3rd Cir. 2000)).

Nearly seven decades ago, the Supreme Court opined that it would be both "uneconomical" and "vexatious" for a federal district court to hear a declaratory judgment action, concurrently with ongoing proceedings involving the same parties and same legal issues (not arising under federal law) in state court. *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). *Brillhart* admonished lower courts scrupulously to avoid "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation." *Id.* In the wake of *Brillhart*, courts in this Circuit have long recognized that they have discretion to "decline to entertain a declaratory judgment action on the merits when a pending proceeding in another court will fully resolve the controversy between the parties." *Ven-Fuel, Inc. v. Department of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982); *see also Federal Reserve Bank of Atlanta v. Thomas*, 220 F.3d 1235, 1247 (11th Cir. 2000) ("A court may

exercise its discretion to dismiss a declaratory judgment action in favor of a pending state court proceeding that will resolve the same state law issues.").

In *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005), the Eleventh Circuit furnished district courts with guidance in how to wield their *Wilton/Brillhart* discretion under the Declaratory Judgment Act in the presence of parallel state proceedings. *Ameritas* emphasized that district courts must balance the interests of federalism, comity, and efficiency in determining whether to hear a declaratory judgment action in those circumstances, and promulgated a non-exhaustive set of nine "guideposts" to be considered. *Id.* at 1330-31.[1]

## III. Analysis.

The crux of the Motion to Stay is defendant's request that this Court exercise its discretion in favor of staying this case pending resolution of the Underlying Action. In so moving, Water's Edge has cast its Motion exclusively in terms of *Ameritas* principles. Specifically, movant urges the Court to apply the multifactor test from *Ameritas* and to conclude from those considerations that *Wilton/Brillhart* abstention is warranted here.[2]

---

[1] Those guideposts are as follows: "(i) the state's interest in deciding the matter; (ii) whether a judgment in the federal action would completely resolve the controversy; (iii) whether the declaratory judgment action would clarify the parties' legal relations; (iv) whether the federal action is a form of procedural fencing being utilized to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case not otherwise removable; (v) whether a ruling in the declaratory judgment action would increase friction between federal and state courts or otherwise encroach on state proceedings; (vi) whether a superior alternative remedy exists; (vii) whether underlying facts are important to informed resolution of the matter; (viii) whether the state court is better situated than the federal court to evaluate those facts; and (ix) the nexus (if any) between the underlying issues and state law/policy, and whether federal common or statutory law requires resolution of the declaratory judgment action." *Lexington Ins. Co. v. Rolison*, 434 F. Supp.2d 1228, 1234 (S.D. Ala. 2006) (citation and internal quotation marks omitted).

[2] The Court is aware that Water's Edge's reply brief raises a brand-new argument that Essex's request for declaratory judgment as to its duty to indemnify (as opposed to its duty to defend) Water's Edge in the Underlying Case is not ripe. (Doc. 21, at 2-3.) This ground for stay is not found in movant's principal brief, nor does it respond directly to arguments presented by Essex's opposition brief; rather, it constitutes an entirely new and distinct legal issue. Because it is improper for a litigant to inject such new arguments in a reply brief, the Court will not consider it here. *See, e.g., Nelson v. La Crosse County Dist. Atty. (State of Wisconsin)*, 301 F.3d 820, 836 (7th Cir. 2002) ("It is well settled that issues raised for the first time in a reply brief are deemed waived."); *North Carolina Alliance for Transp. Reform, Inc. v. U.S. Dep't of Transp.*, 713 F. Supp.2d 491, 526-27 (M.D.N.C. 2010) ("To the extent Plaintiffs seek to raise in (Continued)

An important threshold question is whether *Ameritas* even applies in this case. After all, the Supreme Court in *Brillhart* addressed the circumstance "where another suit is pending in a state court presenting the ***same issues***, not governed by federal law, between the ***same parties***." *Brillhart*, 316 U.S. at 495 (emphasis added). And *Ameritas* itself spoke in terms of applying the guidepost analysis where there is "parallel litigation in the state courts." 411 F.3d at 1331.[3]

In this action, there is neither identity of parties and issues, nor parallel state litigation. Essex Insurance Company, the plaintiff in this action, is not a party to the Underlying Action. No coverage issues have been joined in the Underlying Action. The fact finder in the Underlying Action will make no conclusive determinations about the completeness or veracity of Water's Edge's insurance application, or about whether Foley's claims against Water's Edge lie within the scope of the Policy, as modified by the Classification Limitation Endorsement. Certainly, the Underlying Action will say nothing about whether Essex has a duty to defend Water's Edge in that case, which issue Essex has squarely presented in this lawsuit. In short,

---

a reply brief arguments not addressed in their opening brief or raised by Defendants' response, the court would not consider such arguments on the grounds they were not fairly raised."); *PrecisionIR Inc. v. Clepper*, 693 F. Supp.2d 286, 291 n.2 (S.D.N.Y. 2010) (where defendants raised new arguments in summary judgment reply brief, "[t]he Court will not consider Defendants' expanded, procedurally-improper arguments"); *Abrams v. Ciba Specialty Chemicals Corp.*, 663 F. Supp.2d 1220, 1232 n.16 (S.D. Ala. 2009) ("new arguments are impermissible in reply briefs"); *Evans v. Infirmary Health Services, Inc.*, 634 F. Supp.2d 1276, 1285 n.14 (S.D. Ala. 2009) ("this Court's general practice is not to consider new arguments raised in a reply brief").

[3] Many, though by no means all, cases applying this doctrine have limited it to circumstances where a parallel state court action exists. *See, e.g., Wachovia Bank Nat'l Ass'n v. EnCap Golf Holdings, LLC*, 690 F. Supp.2d 311, 328 n.2 (S.D.N.Y. 2010) ("When a federal declaratory judgment action is pending at the same time as parallel state court action, abstention under *Brillhart* and *Wilton* may be called for."); *Smithers Const., Inc. v. Bituminous Cas. Corp.*, 563 F. Supp.2d 1345, 1348 (S.D. Fla. 2008) (determining that "abstention or remand is not warranted because there is no parallel litigation in state court addressing the same issues between same parties that would resolve the insurance coverage dispute at issue in this action"); *Peak N.D., LLC v. Wilkinson*, 2010 WL 2163503, *6 (D.N.D. May 25, 2010) (*Wilton / Brillhart* abstention "is generally inapplicable in the absence of ongoing parallel state proceedings"); *Workman Securities Corp. v. Phillip Roy Financial Services, LLC*, 2010 WL 155525, *5 (D. Minn. Jan. 11, 2010) ("A district court may properly decline to exercise [*Brillhart*/*Wilton*] discretion when there are parallel state-court proceedings involving the same parties and the same state-law issues.").

what we have here are not parallel state court proceedings, but merely related state court proceedings.[4]  "In such circumstances, courts have shown marked reluctance to exercise their discretion to stay or dismiss the declaratory judgment action." *State Farm Fire and Cas. Co. v. Knight*, 2010 WL 551262, *3 (S.D. Ala. Feb. 11, 2010).  Indeed, some appellate courts have found that *Wilton / Brillhart* discretion to abstain from hearing a declaratory judgment action is substantially narrowed in the absence of parallel state proceedings, while others have found that the dissimilarities between state and federal actions are simply part and parcel of the *Wilton/Brillhart* analysis.  *See id.* (collecting cases and delineating various approaches).  At a minimum, however, the absence of parallel proceedings is a substantial factor bearing on the *Wilton/Brillhart* analysis.  *See, e.g., Medical Assur. Co. v. Hellman*, 610 F.3d 371, 379 (7th Cir. 2010) ("One factor supporting a decision to stay an action is the existence of adequate parallel proceedings.").

Even if the *Ameritas* analysis were fully applicable in the absence of parallel litigation in state court, the Court is of the opinion that a stay is unwarranted here.  While there are (or may be) substantial common facts between the two cases, the legal issues presented are entirely distinct.[5]  As such, the interests of federalism, comity and efficiency on which *Wilton / Brillhart*

---

[4] For purposes of *Wilton/Brillhart* abstention, "[s]uits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Scottsdale Ins. Co. v. Detco Industries, Inc.*, 426 F.3d 994, 997 (8th Cir. 2005) (citations omitted); *see also Tyrer v. City of South Beloit, Ill.*, 456 F.3d 744, 752 (7th Cir. 2006) ("Generally, a suit is parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum.") (internal quotation marks omitted); *Indian Harbor Ins. Co. v. Republic Services, Inc.*, 2010 WL 3701308, *2 (N.D. Ill. Sept. 10, 2010) ("Two actions are deemed to be parallel actions when substantially the same parties are contemporaneously litigating substantially the same issues in two fora.") (citation and internal quotation marks omitted). Where the declaratory judgment action is brought by an insurer against an insured, there are no parallel proceedings if "(1) the insurer was not a party to the suit pending in state court; and (2) the state court actions involved issues regarding the insured's liability, whereas the federal suit involved matters of insurance coverage." *Continental Cas. Co. v. Advance Terrazzo & Tile Co.*, 462 F.3d 1002, 1006 (8th Cir. 2006) (citation omitted). That is precisely the case here.

[5] The gravamen of Water's Edge's Motion to Stay lies in those common facts.  For example, Water's Edge opines that "[f]acts significant for the determination of whether Water's Edge misstated its business operations on the insurance application will probably be determined in the state court action." (Doc. 14-1, at 7.)  Water's Edge further asserts that (i) the state court will decide when the purportedly hazardous condition was created and what Water's Edge knew about it; (ii) the state court may consider facts as to "[t]he relationship of these business entities
(Continued)

abstention are founded are not directly implicated here. Stated in terms of *Ameritas* guideposts, it does not appear that adjudicating Essex's declaratory judgment action would in any way encroach on the state proceedings or cause friction between federal and state judiciaries. If anything, the opposite is true, as a definitive ruling by this Court about whether Essex has a duty to defend or indemnify Water's Edge in the Underlying Action may facilitate disposition of those state court proceedings by eliminating uncertainty as to Essex's duties owed to Water's Edge. Moreover, it is readily apparent that the declaratory judgment action would clarify the parties' legal relations in a manner that the Underlying Action cannot and will not (at least, as between Water's Edge and Essex). Furthermore, it is abundantly clear that Essex did not improperly multiply the proceedings or bring this action in an act of procedural fencing to race for *res judicata*; to the contrary, Essex appears to have brought this action in the proper forum for an entirely proper purpose to resolve issues not joined in the Underlying Action. In any event, staying this case pending the outcome of the Underlying Action would be wholly unproductive

---

to each other and to the construction project"; (iii) facts decided in the Underlying Action "will also affect the interpretation of the insurance application and policy"; and (iv) generally speaking, "[t]he facts leading to a decision of the substance of the federally pleaded issues will be decided in state court." (*Id.*, at 7, 10.) But this reasoning is opaque for at least three reasons. First, it is not at all clear that the state-court jury will consider many facts bearing on Essex's duty to defend or indemnify in deciding the key questions in that case, which include whether Water's Edge negligently or wantonly built a ramp to Tacky Jack's, whether that ramp was unreasonably dangerous, whether that negligence or wantonness caused Foley's injuries, and the extent of Foley's damages. Second, even assuming coverage-related facts are relevant to Foley's lawsuit, that the jury may (or may not) consider these facts in the Underlying Action does not mean that it will make conclusive formal findings concerning each of them. And third, even if the jury in the Underlying Action were to make formal findings of fact on each of these points, extrapolating from those findings to the coverage issues joined in this declaratory judgment action would require a factual and legal leap that these jurors will not be asked to make, thus leaving the coverage issues joined in this case undecided even after the Underlying Action has concluded.

Movant's argument reduces to the unremarkable proposition that there are (or may be) common facts in the two cases. But the mere overlap of certain facts, without more, does not in any way suggest that this case will interfere or encroach on the state court proceedings, much less justify the imposition of a stay of this properly filed federal declaratory judgment action pending the conclusion of the Underlying Action. After all, it is rare that an insurance coverage declaratory judgment action does not involve overlapping facts with the underlying tort action, yet such declaratory judgment actions deciding coverage routinely coexist with state-court litigation concerning liability.

(and certainly would not preserve judicial or litigant resources) because the coverage issues would remain undecided in this case after the Underlying Action was completed. What's more, the duty-to-defend component of this declaratory judgment action would almost certainly be rendered moot by a stay pending resolution of the Underlying Action, thereby needlessly frustrating Essex's efforts to obtain a ruling on the merits as to that issue.[6]

In short, the undersigned is of the opinion that this declaratory judgment action does not amount to gratuitous interference with the orderly and comprehensive disposition of the pending state court litigation between Foley and Water's Edge. It does not foster tension between federal and state courts. It will not breed redundancy or waste judicial or litigant resources by raising the specter of inconsistent rulings or duplication of effort. And it does not run afoul of considerations of practicality and wise judicial administration. In short, it does not implicate any of the fundamental policy considerations that prompted creation of the judicial doctrine of *Wilton / Brillhart* abstention in the first place. Accordingly, the Court will not exercise its discretion under the *Wilton / Brillhart* line of authorities to stay this declaratory judgment action pending resolution of the underlying tort case pending in state court.

**IV. Conclusion.**

For all of the foregoing reasons, the Motion to Stay Proceedings (doc. 14) is **denied**. Water's Edge is **ordered** to file an answer to the Complaint on or before **February 7, 2011.** To get this action back on track, the parties are **ordered** to file their Rule 26(f) Report (see doc. 9) by no later than **February 17, 2011**.

DONE and ORDERED this 27th day of January, 2011.

                                        s/ WILLIAM H. STEELE
                                        CHIEF UNITED STATES DISTRICT JUDGE

---

[6] The Court understands that Essex is presently providing a defense to Water's Edge in the Underlying Action under a reservation of rights. Staying this action would ensure that Essex never has an opportunity to be heard as to whether it does or does not have a duty to defend Water's Edge, inasmuch as Water's Edge would in all likelihood continue to enjoy that Essex-provided defense throughout the duration of the stay. By the time the stay was lifted and this coverage action proceeded, Essex's defense of the Underlying Action would have terminated, with Water's Edge receiving the full benefits of same.