IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ESSEX INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 10-0511-WS-M |
| | ) |
| MICHAEL E. FOLEY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter comes before the Court on plaintiff's Motion for Summary Judgment (doc. 25). The Motion has been briefed and is now ripe for disposition.[1]

**I. Nature of the Case.**

This declaratory judgment action was brought by Essex Insurance Company ("Essex") to resolve an insurance coverage dispute arising from a slip-and-fall accident at premises owned by its insured, defendant Water's Edge, LLC ("Water's Edge"). Defendants Michael Edward Foley ("Mr. Foley") and Susan Mary Foley are presently suing Water's Edge and others in state court seeking to recover compensatory and punitive damages for Mr. Foley's injuries sustained in that accident. To date, Essex has been providing a defense to Water's Edge in that state-court action, but it now seeks a declaration that the relevant insurance policy neither provides coverage nor requires Essex to defend Water's Edge in that matter. Essex's position is that coverage is excluded by the insurance policy's Classification Limitation Endorsement.

---

[1] In reviewing the parties' submissions, the Court notes that the Foleys' opposition brief attaches as an exhibit the entire 122-page deposition transcript of Joseph Scott Raley. (Doc. 30, Exh. E.) Yet the Foleys rely on only four short excerpts from that transcript as part of their summary judgment argument. (Doc. 30, at 9-10.) Inclusion of the entire transcript is improper, inasmuch as the Local Rules provide that "[i]f discovery materials are germane to any motion or response, only the relevant portions of the material shall be filed with the motion or response." LR 5.5(c).

Although this case is still in the midst of discovery, Essex has already moved for summary judgment on whether it owes a duty to defend, presumably in hopes of cutting off its defense obligations to its insured in the underlying action as expeditiously as possible. No party has objected to the timing of the motion under Rule 56(d), Fed.R.Civ.P.; rather, both Water's Edge and the Foleys have responded on the merits.

## II.     Relevant Background.[2]

### A.     *The Underlying Action.*

On or about April 1, 2010, the Foleys filed suit against Water's Edge and others in the Circuit Court of Baldwin County, Alabama (the "Underlying Action"). As initially presented, the Foleys' complaint (doc. 1, Exh. A) alleged that in spring 2009 Water's Edge "began remodeling a parking lot for Tacky Jack's restaurant" in Fort Morgan, Alabama. In the course of that endeavor, the Foleys alleged, Water's Edge "negligently and/or wantonly built a makeshift plywood ramp specifically for use by the employees of Tacky Jack's restaurant along the side of the parking lot." (*Id.*, at 1.) The Foleys' complaint further asserted that on May 22, 2009, Mr. Foley (a Tacky Jack's employee) slipped and fell on the ramp, shattering his femur and sustaining permanent injuries.

On February 1, 2011, just two weeks before Essex moved for summary judgment in this case, the Foleys amended their complaint in the Underlying Action for the stated purpose of "alleg[ing] specific acts of negligence and/or wantonness against defendant Joe Raley Builders, Inc." (doc. 31, Exh. A), not to alter materially their claims or theories of relief against Water's Edge.[3] But the Amended Complaint also modified the Foleys' allegations concerning Water's Edge, as follows: (i) deleted the allegation that Water's Edge itself was remodeling the parking lot; (ii) clarified that Water's Edge hired Joe Raley Builders to remodel the parking lot; and (iii)

---

[2]     The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Atlanta Attachment Co. v. Leggett & Platt, Inc.*, 516 F.3d 1361, 1365 (Fed. Cir. 2008) ("When ruling on a motion for summary judgment, all of the nonmovant's evidence is to be credited, and all justifiable inferences are to be drawn in the nonmovant's favor."). Thus, defendants' evidence is taken as true and all justifiable inferences are drawn in their favor.

[3]     Joe Raley Builders, Inc. is not a party to this declaratory judgment action, and what the Foleys have or have not alleged against that entity in the Underlying Action is not germane to the issues joined on summary judgment here.

asserted that "Water's Edge negligently and/or wantonly built a makeshift plywood ramp specifically for use by pedestrians along the side of the parking lot," in lieu of the previous assertion that Water's Edge had built the ramp specifically for the use of Tacky Jack's employees. (*Id.*)

   B.   *The Policy.*

Essex issued an insurance policy (the "Policy") to Water's Edge for the period of June 6, 2008 through June 6, 2009, providing coverage for "Commercial General Liability," "Marina Operator's Legal Liability," and "Marina Operator's Protection and Indemnity." (Doc. 1, Exh. C.) The Commercial General Liability ("CGL") section of the Policy provided that Essex would "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' … to which this insurance applies" and would "have the right and duty to defend the insured against any 'suit' seeking damages for 'bodily injury.'" (Doc. 1, Exh. C, at 18.) Essex has not suggested that the Foleys' claims in the Underlying Action do not fall within the broad general coverage provisions of the CGL portion of the Policy.

Nonetheless, the CGL coverage extended to Essex under the Policy was subject to certain limiting endorsements, one of which is crucial to the coverage issues presented here. In particular, the declaration page of the Policy specifically recited an endorsement coded "ME-030 (4/99)." The endorsement bearing that label is the Classification Limitation Endorsement (the "Classification Endorsement"), which reads as follows: "The coverage provided by this policy applies only to those operations specified in the application for insurance on file with the company and described under the 'description' or 'classification' on the declarations of the policy." (Doc. 1, Exh. C, at 7.)[4]

By its terms, the Classification Endorsement looks to the insurance application and the policy declarations to identify insured "operations" to which coverage applies. It is undisputed that Water's Edge's application filled in the box under the heading "Nature of Business /

---

   [4] The Policy reflects that the Classification Endorsement was attached to it at the outset of the June 6, 2008 to June 6, 2009 term, and was referenced within the Policy; therefore, it was not necessary for the insured to sign that endorsement. *See, e.g., Crews v. National Boat Owners Ass'n Marine Ins. Agency, Inc.*, 46 So.3d 933, 938 (Ala. 2010) ("An unsigned endorsement is valid if it is attached to the policy and is referenced in the policy.") (citation omitted). The Foleys' argument to the contrary misconstrues record facts.

Description of Operations by Premise(s)" with a single word: "Marina."  (Doc. 1, Exh. D, at 1.)
It is likewise undisputed that a "Supplemental Declarations" page in the Policy lists under the
heading "Description of Hazards / Insured Classification(s)" the following: "Boat Moorage and
Storage," "Vessel Fueling," and "Store Sales."  (Doc. 1, Exh. C, at 2.)  Neither the Policy nor the
application sets forth any other "operations" or "classifications" that might be reached by the
Classification Endorsement.

The narrow coverage issue animating this action is whether the Classification
Endorsement excludes coverage for the specific claims asserted by the Foleys in the Underlying
Action.  Stated differently, the question is whether the Foleys' claims concern Water's Edge's
operations within the scope of that Classification Endorsement.

## III. Summary Judgment Standard.

Summary judgment should be granted only if "there is no genuine issue as to any
material fact and ... the movant is entitled to judgment as a matter of law."  Rule 56(c),
Fed.R.Civ.P.  The party seeking summary judgment bears "the initial burden to show the district
court, by reference to materials on file, that there are no genuine issues of material fact that
should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).
Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to
show the existence of a genuine issue of material fact.  *Id.*  "If the nonmoving party fails to make
'a sufficient showing on an essential element of her case with respect to which she has the burden
of proof,' the moving party is entitled to summary judgment."  *Id.*  (quoting *Celotex Corp. v.
Catrett*, 477 U.S. 317 (1986)) (footnote omitted).  "In reviewing whether the nonmoving party
has met its burden, the court must stop short of weighing the evidence and making credibility
determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be
believed, and all justifiable inferences are to be drawn in his favor."  *Tipton v. Bergrohr GMBH-
Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted).
"Summary judgment is justified only for those cases devoid of any need for factual
determinations."  *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987)
(citation omitted).

**IV. Analysis.**

   **A.   *The Duty to Defend.***

The summary judgment analysis in this case will exclusively examine the duty to defend, and not the duty to indemnify. Essex has not requested a ruling on the latter duty at this time; indeed, the Rule 56 Motion states that Essex seeks entry of "an Order establishing that Essex is not required to defend Defendant, Water's Edge, in the underlying Foley Action." (Doc. 25, at 17.) Any discussion of the duty to indemnify would be premature, in any event, given the lack of any final adjudication of the Underlying Action. *See, e.g., Allstate Ins. Co. v. Employers Liability Assur. Corp.*, 445 F.2d 1278, 1281 (5th Cir. 1971) ("[N]o action for declaratory relief will lie to establish an insurer's liability … until a judgment has been rendered against the insured since, until such judgment comes into being, the liabilities are contingent and may never materialize."); *Allstate Indem. Co. v. Lewis*, 985 F. Supp. 1341, 1349 (M.D. Ala. 1997) ("the duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit") (citation omitted).[5] As the undersigned has explained, "[i]t is simply inappropriate to exercise jurisdiction over an action seeking a declaration of the plaintiff's indemnity obligations absent a determination of the insureds' liability." *Employers Mut. Cas. Co. v. All Seasons Window & Door Mfg., Inc.*, 387 F. Supp.2d 1205, 1211-12 (S.D. Ala. 2005). As such, even if Essex were requesting summary judgment concerning its duty to indemnify (which it is not), the Court would decline to reach that question.[6]

---

   [5]   *See also Harleysville Mut. Ins. Co. v. Dapper, LLC*, 2010 WL 2925779, *4 (M.D. Ala. July 21, 2010) ("Courts may decline to exercise their discretion under the Declaratory Judgment Act to decide questions about the duty to indemnify when the underlying action is pending."); *Nationwide Mut. Fire Ins. Co. v. Dillard House, Inc.*, 651 F. Supp.2d 1367, 1373 (N.D. Ga. 2009) (following the "wealth of authority" refraining from deciding premature issues of duty to indemnify and instead confining analysis to duty to defend); *Smithers Const., Inc. v. Bituminous Cas. Corp.*, 563 F. Supp.2d 1345, 1349 (S.D. Fla. 2008) ("insurer's duty to indemnify is not ripe for adjudication in a declaratory judgment action until the insured is in fact held liable in the underlying suit") (citations omitted); *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp.2d 1348, 1360 (M.D. Fla. 2001) ("Because an insurer's duty to indemnify is dependent on the outcome of a case, any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim.").

   [6]   The larger question is whether Essex's Complaint implicates the duty to indemnify at all. Water's Edge maintains that it does, based on the request therein for a declaratory judgment that the "Essex Policy does not provide coverage nor require Essex to
(Continued)

Essex's Motion is thus confined to the duty to defend. In determining the scope of Essex's duty to defend Water's Edge in the Underlying Action, several principles of Alabama law are relevant.[7] "Whether an insurance company owes its insured a duty to provide a defense in proceedings instituted against the insured is determined primarily by the allegations contained in the complaint." *Tanner v. State Farm Fire & Cas. Co.*, 874 So.2d 1058, 1063 (Ala. 2003). Under Alabama law, "[i]f the allegations of the injured party's complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend regardless of the ultimate liability of the insured." *Gunnin v. State Farm and Cas. Co.*, 508 F. Supp.2d 998, 1002 (M.D. Ala. 2007) (citation omitted). However, a court is not constrained to consider only the allegations of the underlying complaint, but may additionally look to facts which may be proved by admissible evidence. *Tanner*, 874 So.2d at 1064; *see also Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So.2d 1006, 1010 (Ala. 2005) (in deciding whether the allegations of the complaint show a covered accident or occurrence, "the court is not limited to the bare allegations of the complaint … but may look to facts which may be proved by admissible evidence") (citations omitted). The test, ultimately, is this: "The insurer owes no duty to defend only if neither does the complaint against the insured allege a covered accident or occurrence nor does the evidence in the litigation between insurer and insured prove a covered accident or occurrence." *Tanner*, 874 So.2d at 1065. The resulting "broad duty on the part of an insurer to defend an insured arises out of the principle that an ambiguous insurance policy is to be construed liberally in favor of the insured and strictly against the insurer." *Hartford*, 928 So.2d at 1011. Essex's Rule 56 Motion will be considered through the lens of these principles.

### B. *Construing the Classification Endorsement.*

Plaintiff's Motion for Summary Judgment relies heavily on the Classification Endorsement; however, the parties' briefs reflect stark differences in their interpretations of that

---

defend Water's Edge" (doc. 1, at 7) in the Underlying Action. (Doc. 31, at 4.) But the Complaint is ambiguous on this point, and Essex is silent as to its intentions. As such, it is unclear whether a "duty to indemnify" issue is joined in this action or not.

[7]  The parties' briefs reflect unanimous agreement that the Policy is governed by Alabama law. This is appropriate, inasmuch as the Policy was issued to an Alabama limited liability company to provide coverage for certain operations at a particular location in Alabama.

provision. For that reason, the analysis of Essex's duty to defend properly begins with examination of the text and meaning of that endorsement.

Because the Classification Endorsement is a narrowing clause that limits the otherwise-broad coverage provided under the Policy, it is in the nature of an exclusion. Under Alabama law, the burden of proving applicability of a policy exclusion rests with the insurer. *See, e.g., Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So.2d 687, 697 (Ala. 2001) ("Twin City has the burden of proof in asserting that a claim is excluded under its policy of insurance."); *Acceptance Ins. Co. v. Brown*, 832 So.2d 1, 12 (Ala. 2001) ("In general, the insurer bears the burden of proving the applicability of any policy exclusion.").[8]

As noted, the Classification Endorsement limits the Policy's coverage "only to those operations specified in the application for insurance on file with the company **and** described under the 'description' or 'classification' on the declarations of the policy" (emphasis added). The parties spar over the meaning of the word "and." Essex takes the position that the Foleys' claims are not covered unless they relate to operations that are both specified in the application and set forth in the declarations, such that an operation recited in one location but not the other would be excluded from coverage. By contrast, Water's Edge and the Foleys insist that the Foleys' claims are covered if they relate to operations specified in either the application or the declarations, even if the same operation is not listed in both sets of documents. Defendants have the better argument.

The Alabama Supreme Court has made clear that "[g]eneral rules of contract law govern an insurance contract" and that "[t]he court must enforce the insurance policy as written if the terms are unambiguous." *Lambert v. Coregis Ins. Co.*, 950 So.2d 1156, 1161 (Ala. 2006)

---

[8] Notwithstanding objections by defendants, however, there is nothing *per se* invalid or illusory about the inclusion of a limiting provision in an insurance policy. That the Policy extends commercial general liability coverage to Water's Edge with one hand, then narrows that coverage to certain enumerated "operations" with the other, is neither illusory coverage nor otherwise problematic under Alabama law. *See generally St. Paul Mercury Ins. Co. v. Chilton-Shelby Mental Health Center*, 595 So.2d 1375, 1377 (Ala. 1992) ("in the absence of statutory provisions to the contrary, insurers have the right to limit their liability by writing policies with narrow coverage").

(citations omitted).[9] Alabama law provides that "[a] court must not rewrite a policy so as to include or exclude coverage that was not intended." *State Farm Mut. Auto. Ins. Co. v. Brown*, 26 So.3d 1167, 1169 (Ala. 2009) (citations omitted).

Under Alabama law, "[t]he issue whether a contract is ambiguous or unambiguous is a question of law for a court to decide. ... If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court." *Nationwide Ins. Co. v. Rhodes*, 870 So.2d 695, 696-97 (Ala. 2003) (citation omitted); *see also B.D.B. v. State Farm Mut. Auto. Ins. Co.*, 814 So.2d 877, 879 (Ala.Civ.App. 2001) ("The interpretation of an insurance contract presents a question of law."). An insurance provision is ambiguous "when it may be understood in more than one way or when it refers to two or more things at the same time." *Shrader v. Employers Mut. Cas. Co.*, 907 So.2d 1026, 1033 (Ala. 2005) (citations omitted); *see also Lambert*, 950 So.2d at 1162 ("A term in a contract is ambiguous only if, when given the context, the term can reasonably be open to different interpretations by people of ordinary intelligence."). "In determining whether the language of a contract is ambiguous, courts construe the words according to the interpretation ordinary men would place on the language used therein. ... The words are given the meaning that persons with a usual and ordinary understanding would place on the words." *Progressive Specialty Ins. Co. v. Naramore*, 950 So.2d 1138, 1141 (Ala. 2006) (citations and internal quotations omitted).

The Court finds that the Classification Endorsement is ambiguous because it may be reasonably understood in more than one way. The above-quoted policy language (*i.e.*, that coverage "applies only to those operations specified in the application for insurance … and described … on the declarations") could be reasonably read either as fixing two cumulative prerequisites for coverage (such that coverage would apply only to an operation that is recited in both the application and the declarations) or as identifying two sets of documents where covered operations may be listed (such that coverage would apply to any operation that is either specified

---

[9] *See also Progressive Specialty Ins. Co. v. Naramore*, 950 So.2d 1138, 1141 (Ala. 2006) ("Insurance contracts are to be enforced as they are written, as long as there is no ambiguity in the provisions involved.") (citations omitted); *Shrader v. Employers Mut. Cas. Co.*, 907 So.2d 1026, 1034 (Ala. 2005) ("If there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy ... by making a new contract for the parties.") (citation omitted).

in the application or described in the declarations). Thus, both Essex and Water's Edge have proffered reasonable, but conflicting, interpretations of the Classification Endorsement. The endorsement is ambiguous.

As a general proposition, "[t]o the extent the language of an insurance policy provision is ambiguous, all ambiguities must be resolved against the insurance company." *Safeway Ins. Co. of Alabama, Inc. v. Herrera*, 912 So.2d 1140, 1143 (Ala. 2005); *see also HR Acquisition I Corp. v. Twin City Fire Ins. Co.*, 547 F.3d 1309, 1315 (11th Cir. 2008) ("when doubt exists as to whether coverage is provided under an insurance policy, the language used by the insurer must be construed for the benefit of the insured"). Moreover, "when ambiguity exists in the language of an exclusion, the exclusion will be construed so as to limit the exclusion to the narrowest application reasonable under the wording." *Porterfield v. Audobon Indem. Co.*, 856 So.2d 789, 806 (Ala. 2002) (citation omitted); *see also Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Roberts Bros., Inc.*, 550 F. Supp.2d 1295, 1304 (S.D. Ala. 2008) (similar). In light of these principles, the Court will interpret the Classification Endorsement narrowly by resolving its ambiguity in the manner most favorable to the insured. Accordingly, as long as the Foleys' claims relate to Water's Edge operations that are <u>either</u> specified in the application <u>or</u> described under the "classification" on the Policy's declarations, the duty to defend attaches.[10]

---

[10] In so resolving the ambiguity, the Court need not reach defendants' alternative argument that construing the Classification Endorsement as Essex does would violate Alabama's prohibition on illusory coverage. Defendants would have prevailed on this basis, in any event. Alabama law requires insurance contracts to be interpreted in a manner that avoids illusory coverage. *See, e.g., Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.*, 480 F.3d 1254, 1263 n.7 (11th Cir. 2007) ("In Alabama, insurance contracts must be interpreted to avoid illusory coverage, which occurs when a limitation or exclusion completely contradicts a coverage provision."). If Essex's dual-hurdle interpretation of the Classification Endorsement were accepted, then the insurer could use that endorsement to deny coverage for Water's Edge's operations of "Boat Moorage and Storage," "Vessel Fueling," and "Store Sales" (as listed on the Policy's Supplemental Declarations, and as to each of which Essex had charged Water's Edge a specific, itemized premium) if those operations were not also listed in an insurance application submitted years earlier. Essentially, then, Essex champions a Policy interpretation under which it could charge its insured a specific premium for a specific designated classification on the declarations page, only to renounce <u>all</u> coverage for that classification if it were omitted from the application form. The Court agrees with defendants that such an interpretation would amount to impermissible illusory coverage, as Essex would be charging its insured premiums tied to specific insured operations as to which there was actually no coverage whatsoever.

The parties are in agreement that the insurance application on file with Essex lists Water's Edge's operations as "Marina." The parties are further in agreement that the "insured classifications" listed on the Policy's supplemental declarations consist of "Boat Moorage and Storage," "Vessel Fueling," and "Store Sales." Under the interpretation of the Classification Endorsement adopted by this Court, then, the Policy provides coverage for bodily injury arising out of any of the following Water's Edge operations: "Marina," "Boat Moorage and Storage," "Vessel Fueling," and "Store Sales." The obvious and critical question to which the Court next turns is whether the Foleys' claims concern such operations.[11]

### C. *Applying the Classification Endorsement to the Foleys' Claims.*

Recall that the Foleys' claims in the Underlying Action rest on allegations that Water's Edge negligently built a makeshift plywood ramp along the side of the parking lot, and that Mr. Foley (a Tacky Jack's employee) slipped and fell on the ramp. There appears to be no *bona fide* dispute, and the Court accepts for summary judgment purposes, that the ramp was built for the sole benefit and use of Tacky Jack's Restaurant and its employees, not for use in boat moorage activities.[12] There likewise appears to be no dispute, and the Court accepts as true for summary

---

[11] Although Water's Edge raises numerous arguments in its opposition brief, it appears to acknowledge that this is the heart of the matter, as follows: "In order for the exclusionary effect of the [Classification Endorsement] to apply, this Court must determine that the claims stated in the [Underlying Action] arise out of operations or activities by Water's Edge that are clearly outside the realm of operations for an entity engaged in the businesses of a 'Marina,' 'Boat Moorage and Storage,' 'Vessel Fueling,' or 'Store Sales.'" (Doc. 31, at 17.)

[12] The Court considers this fact on summary judgment even though the Foleys' February 2011 amended complaint in the Underlying Action strips away most of the detail concerning the purposes and use of the ramp. The original complaint alleged that Water's Edge built the ramp "specifically for use by the employees of Tacky Jack's restaurant," but their amended complaint states that Water's Edge built the ramp "specifically for use by pedestrians." Water's Edge contends that the amended complaint is binding for duty to defend purposes, and that the ramp must therefore be viewed as a generic pedestrian ramp, rather than one specifically for use by the restaurant. Essex, for its part, accuses the Foleys' counsel of violating Rule 11 by filing a sham amended complaint. The Court need not and will not wade far into this tangential morass. Applicable law is clear that an insurer's duty to defend is gauged not only by the "bare allegations of the complaint," but also by "facts which may be proved by admissible evidence." *Hartford*, 928 So.2d at 1010; *see also Roberts Bros.*, 550 F. Supp.2d at 1304 (in evaluating duty to defend, "a court is not constrained to the allegations of the underlying complaint, but may additionally look to facts which may be proved by admissible evidence"). Even if the Foleys could in good faith disavow their now-deleted factual allegations concerning the ramp for
(Continued)

judgment purposes, that the restaurant, parking lot, and boating facilities are all found at the same location, to-wit: the address specified in the "Location of Premises" section of the Policy, which is 1577 Highway 180, Gulf Shores, AL 36542.

The Foleys' claims center on the ramp built for and used by the restaurant on Water's Edge's property. Essex seizes on that fact, maintaining that the Classification Endorsement excludes coverage because the activities of operating a restaurant or constructing a ramp for a restaurant's benefit were neither specified as operations in Water's Edge's application for insurance nor described in the "classification" section of the Policy's declarations. As Essex frames its argument, Water's Edge "never requested coverage for any restaurant operations that were occurring on or near its property. Instead, it applied for and was provided coverage for marina operations." (Doc. 32, at 8.)

Where the insurer's position breaks down, however, is in its insistence that "marina operations" (for which it undeniably does provide coverage to Water's Edge under the language of the Classification Endorsement) are absolutely, categorically separate and distinct from the activities for which the Foleys seek to hold Water's Edge liable. What are "marina operations"? The term "marina" is defined nowhere in the Policy; therefore, the parties agree, the Court must utilize the customary, everyday meaning of the term, consistent with the interpretation that an ordinary person would give it. *See, e.g., Brown*, 26 So.3d at 1169 ("When analyzing an insurance policy, a court gives words used in the policy their common, everyday meaning and interprets them as a reasonable person in the insured's position would have understood them.") (citations omitted); *Lambert*, 950 So.2d at 1161 ("If a word or phrase is not defined in the policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it.") (citations omitted).

Essex urges the Court to apply a "marina" definition confining it to "a water-based business for the mooring and docking of vessels." (Doc. 25, at 13.) In advocating such a

---

coverage purposes, the uncontroverted record evidence is that the ramp was indeed provided for the exclusive use and benefit of Tacky Jack's restaurant. (LaPointe Dep., at 43-45, 74.) This is true, even though Essex's reply brief omits the cited portions of Mr. Foley's deposition transcript on which it relies for this proposition. In short, after cutting through the red-herring arguments and rhetoric, the Court finds no genuine material dispute of fact that the ramp in question was built and used for the benefit of Tacky Jack's restaurant operations.

restrictive meaning, however, Essex relies on definitions culled from the Alabama Code and the Baldwin County Zoning Ordinances, both of which define the term for certain particularized regulatory purposes. These sources are unhelpful. After all, courts do not look to technical or legal definitions in construing undefined terms in an insurance policy; rather, they apply the terms' plain, ordinary meaning. *See Herrera*, 912 So.2d at 1143 ("The court should not define words it is construing based on technical or legal terms.").

In common parlance and understanding, a marina may be far more than a place to dock a personal watercraft. Indeed, marinas are commonly and usually understood to provide a variety of ancillary, complimentary facilities and services above and beyond the mere moorage of vessels. In that regard, the *Merriam-Webster Dictionary* defines "marina" as "a dock or basin providing secure moorings for pleasure boats and ***often offering supply, repair, and other facilities***" (emphasis added). Those "other facilities" may be commonly understood as including restaurant facilities.[13] In fact, it is entirely commonplace for restaurants to be part and parcel of

---

[13] As examples of this fact, the case law is rife with references to marinas that include restaurants. *See, e.g., RRK, Inc. v. New Hampshire Ins. Co.*, 2010 WL 1473354, *1 (S.D. W.Va. Apr. 9, 2010) ("Plaintiff is the owner and operator of a marina … upon which Plaintiff operated a restaurant, a boat store, and three apartments."); *Nichols v. Stone*, 2010 WL 1346422, *1 (D. Md. Mar. 31, 2010) ("The Broomes Island property was operated as a marina containing boat slips, a restaurant and approximately ten rental residential structures."); *In re MTM Realty Trust*, 2009 WL 612147, *2 (Bankr. D.N.H. Mar. 9, 2009) ("a debtor's operation of a marina involves more than the simple rental of moorings because the debtor also stored boats, provided showers and a pool, sold concessions, and sold gas for boaters"); *Friends of Liberty State Park, Inc. v. Jackson*, 2010 WL 163192, *1 (N.J. Super. A.D. Nov. 23, 2009) (describing "a marina with 200 berths, a boat launch and a restaurant"); *State v. Simpson*, 2008 WL 490611, *2 (Tenn.Crim.App. Feb. 25, 2008) ("Patton said that he saw the defendant eat at the restaurants at the marina several times …."); *Borreski v. Zoning Comm'n*, 2006 WL 574179, *5 (Conn.Super. Feb. 24, 2006) ("The record contains the following examples of marinas that have on-site events facilities: (1) Cedar Island Marina has … a restaurant and lounge; (2) the Mystic Shipyard has a banquet facility; (3) Brewer Stratford Marina has a restaurant; and (4) Pilots Point Marina has a restaurant …."); *Killebrew v. State*, 2005 WL 1840047, *1 (Tex.App.-Dallas Aug. 4, 2005) ("The three were returning to the dock after having 'some drinks' at a restaurant on the marina."); *Durnelco, Inc. v. Double James, L.L.C.*, 2002 WL 1379571, *1 (Tenn.Ct.App. June 26, 2002) ("The leasehold property is a restaurant facility located at a marina in Harrison."); *Arnold v. JLM Inv. Associates Ltd. Partnership*, 762 So.2d 993, 994 (Fla. App. 4 Dist. 2000) ("The evidence at trial supports the trial judge's conclusion that a 100-seat restaurant and bar could be reasonably incidental to the operation of a marina for the purchase, sale, storage, docking, care, maintenance and repairing of boats.") (internal quotation marks omitted); *Wile v. Loe's Highport, Inc.*, 2000 WL 36069, *1 (N.D. Tex. Jan. 18, 2000) (noting that marina "offers a (Continued)

marinas, and for them to be operated, marketed and branded together as part of the same facilities and premises.[14] It would do violence to the common understanding of the term "marina" to declare (as Essex would have this Court do) that "marina operations" necessarily exclude restaurant operations for a restaurant located on the same premises as the boat slips.

The point, quite simply, is this: Lots of marinas have restaurants. In the common and usual understanding, the term "marina" may include on-site restaurant facilities. Based on that determination, the Court cannot find as a matter of law that the Foleys' claims in the Underlying Action are excluded from coverage by the Classification Endorsement. After all, that Endorsement specifically provides coverage to Water's Edge for marina operations. Marina operations may include restaurant operations if that restaurant is part of the marina. More importantly, remember that the Foleys do not accuse Water's Edge of negligent food service or restaurant operations, *per se*, but instead claim that Water's Edge negligently erected an unsafe, inadequate ramp to facilitate said restaurant's business. It is no great stretch to say that Water's Edge's covered "marina operations" may include the management, oversight, and coordination of support services for common areas used by ancillary service providers at Water's Edge's marina. As such, if the area where the ramp was built is part of the marina complex, and if Water's Edge constructed the ramp as part of its overall marina maintenance and oversight activities, then Water's Edge's conduct would fall within any reasonable meaning of the term "marina operations."

---

number of facilities, services, and goods … such as … retail sales facilities and a public restaurant").

[14] By way of illustration, the Court takes judicial notice of the existence of such combined marina/restaurant facilities as the Inlet Harbor Restaurant & Marina in Daytona Beach, Florida; the Bear Creek Marina & Restaurant in Mansfield, Georgia; the Dolphin Marina and Restaurant near Harpswell, Maine; the Pilot House Marina & Restaurant in Key Largo, Florida; the Marina Jack marina/restaurant facility in Sarasota, Florida; the Curtin Marina facility (which includes a full-service marina and waterside restaurant) in Burlington City, New Jersey; and the Holiday Shores Marina & Restaurant on the shores of Lake Livingston, Texas. *See generally Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988) ("It is proper for a court to judicially notice matters outside of the record if they are generally known within the territorial jurisdiction of the trial court or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

In short, there are genuine questions of material fact as to whether the activities for which the Foleys seek to hold Water's Edge liable fall within the scope of the Classification Endorsement.[15] On that basis, Essex's Motion for Summary Judgment as to its duty to defend is properly **denied** at this time.

### D. *The Foleys' Embedded Rule 56 Motion.*

One other issue should be addressed at this time. Although Water's Edge has not moved for summary judgment, the Foleys have submitted a consolidated filing that is styled as both a response to Essex's Motion for Summary Judgment and a separate Motion for Summary Judgment of their own. (*See* doc. 30.)[16] To the extent that the Foleys sought to bring their own Motion, it is not entirely clear what relief they seek or why they would be entitled to it at this juncture. If the Foleys are asking for a determination as to Essex's duty to indemnify Water's Edge for any favorable judgment that the Foleys may someday obtain against Water's Edge in the Underlying Action, such a request (at best) is premature for the reasons set forth in Section IV.A., *supra*. If the Foleys are asking for summary judgment as to Essex's duty to defend Water's Edge in the Underlying Action, it is not at all clear why the Foleys would have standing

---

[15] These questions of material fact may relate to the specific layout of the marina area, the geographic nexus of the restaurant (and the area where the plywood ramp was installed) to that marina area, the relationship and duties owed between the marina operator and the restaurant operator, and so on. None of those facts are established in the record. For example, suppose that Water's Edge's premises included an entire marina complex, including boat slips, the Tacky Jack's restaurant, retail areas selling boat supplies, refueling areas, and parking facilities. Suppose also that as owner of those premises, Water's Edge maintained the common areas of that marina complex, to facilitate the efficient flow of traffic and the smooth integration of each of these components of the marina's various businesses. If those facts were accurate, then the claims brought by the Foleys concerning alleged negligent installation of a plywood ramp outside Tacky Jack's would fall well within the scope of Water's Edge's marina operations, so as to be covered under the Classification Endorsement. The foregoing is simply an example. It is possible to conceptualize an entire spectrum of factual scenarios, under which Water's Edge's alleged activities could run the gamut from being viewed as plainly "marina operations" to being plainly not "marina operations." The parties must explore these attendant facts and circumstances during the discovery process in order to flesh out the context needed for a definitive resolution of whether the insured's acts were or were not within the parameters of the Classification Endorsement.

[16] No party has responded to the Foleys' purported Motion for Summary Judgment, whether because of its ill-defined character or its semi-camouflaged presentation.

-14-

to demand such relief (inasmuch as whether Essex is or is not paying the costs of Water's Edge's defense in the Foleys' lawsuit would appear to be none of the Foleys' concern). More generally, as the above discussion reflects, there are unresolved fact questions as to whether Water's Edge's conduct for which the Foleys seek to hold it liable does or does not fall within the scope of "Marina" operations so as to be within the Policy coverage. For these reasons, the Foleys' undeveloped Motion for Summary Judgment (doc. 30) is **denied**.

## V.     Conclusion.

For all of the foregoing reasons, it is **ordered** that Plaintiff's Motion for Summary Judgment (doc. 25) and Defendants' Mike and Susan Foley's Motion for Summary Judgment (doc. 30) are both **denied**.

DONE and ORDERED this 5th day of May, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE