IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ESSEX INSURANCE COMPANY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.   ) | CIVIL ACTION 10-0511-WS-M |
| ) | |
| **MICHAEL E. FOLEY,** *et al.*, ) | |
| ) | |
| Defendants. ) | |

## ORDER

This matter comes before the Court on the Renewed Motion for Summary Judgment (doc. 58) filed by plaintiff, Essex Insurance Company. The Motion has been briefed and is now ripe for disposition.[1]

### I.   Relevant Background.

This declaratory judgment action was brought by Essex Insurance Company to resolve an insurance coverage dispute arising from a slip-and-fall accident at premises owned by its insured,

---

[1] Also pending is defendants' Motion to Strike Plaintiff's Renewed Motion for Summary Judgment (doc. 61). Even if the arguments in the Motion to Strike are accepted at face value, they would warrant, at most, denial of the Renewed Motion for Summary Judgment. Defendants have not shown why the extreme remedy of striking that Renewed Motion (as opposed to merely denying it) is appropriate, nor can the undersigned perceive any constructive purpose that would be served by striking a Rule 56 Motion simply because it is deemed to lack merit. *See generally Odom v. Southeast Supply Header, LLC*, 2009 WL 1658961, *1 (S.D. Ala. June 11, 2009) ("The mere presence of legal and factual disputes, without more, hardly justifies the extreme and disfavored remedy of striking [a party's] pleading pursuant to Rule 12(f)."); *English v. CSA Equipment Co.*, 2006 WL 2456030, *2 & n.5 (S.D. Ala. Aug. 22, 2006) (describing limited circumstances in which draconian remedy of striking material from court file is appropriate); *McGlauflin v. RCC Atlantic Inc.*, 269 F.R.D. 56, 57 (D. Me. 2010) (explaining that motions to strike are disfavored because "[m]odern litigation is too protracted and expensive for the litigants and the court to expend time and effort pruning or polishing the pleadings") (citation omitted); *Exhibit Icons, LLC v. XP Companies, LLC*, 609 F. Supp.2d 1282, 1300 (S.D. Fla. 2009) ("Motions to strike, however, are generally disfavored by the court," and are a "drastic remedy to be resorted to only when required for the purposes of justice") (citations omitted). Simply put, the Court "will not strike a … brief simply because an argument expressed therein may suffer from a logical or factual defect." *English*, 2006 WL 2456030, at *2. The Motion to Strike is **denied** as improper.

defendant Water's Edge, LLC. The accident occurred in Fort Morgan, Alabama, when defendant Michael Foley fell on a plywood ramp that Water's Edge had constructed at a Tacky Jack's restaurant where he was employed. Foley (and his wife, defendant Susan Foley) filed suit against Water's Edge and others in state court, seeking to recover money damages for Foley's injuries sustained in that accident. Essex has been furnishing a defense to Water's Edge in the state-court proceedings, but seeks a declaration from this Court that it owes no duty to defend Water's Edge.

The Court is keenly familiar with the legal issues joined in this action. After all, more than eight months ago, just after discovery commenced, Essex moved for summary judgment on the duty to defend issue. At that time, Essex maintained that a Classification Limitation Endorsement (the "Classification Endorsement") in the subject insurance policy barred coverage for the Foleys' claims. The Classification Endorsement reads as follows: "The coverage provided by this policy applies only to those operations specified in the application for insurance on file with the company and described under the 'description' or 'classification' on the declarations of the policy." (Doc. 1, Exh. C, at 7.) The summary judgment record unambiguously showed that the only type of operation specified in the insurance application completed by Water's Edge was "Marina," and that the policy itself listed as insured classifications "Boat Moorage and Storage," "Vessel Fueling," and "Store Sales." (Doc. 1, Exh. D, at 1; doc. 1, Exh. C, at 2.) At its core, Essex's argument was that it should be awarded summary judgment on the duty to defend issue because the Foleys' claims concern Water's Edge activities that were outside the scope of that Classification Endorsement.

On May 5, 2011, the undersigned issued a 15-page Order (doc. 40) denying Essex's initial motion for summary judgment. The salient aspects of that ruling included the following: (i) the Classification Endorsement was ambiguous as to whether coverage reached operations specified in <u>either</u> the application or the declarations, or whether a given operation must be recited in <u>both</u> the application and the declarations to be covered; (ii) under Alabama law, such ambiguity must be resolved in favor of the insured; (iii) resolving the ambiguity in light of that legal principle, "as long as the Foleys' claims relate to Water's Edge operations that are <u>either</u> specified in the application <u>or</u> described under the 'classification' on the Policy's declarations, the duty to defend attaches" (doc. 40, at 9); (iv) the common, everyday meaning of the term "marina operations" includes not only boat slips, but also "a variety of ancillary, complimentary

facilities and services above and beyond the mere moorage of vessels" (*id.* at 12); (v) "[i]t is no great stretch to say that Water's Edge's covered 'marina operations' may include the management, oversight, and coordination of support services for common areas used by ancillary service providers at Water's Edge's marina" (*id.* at 13); and (vi) genuine issues of material fact existed as to whether Water's Edge's conduct in building the ramp at Tacky Jack's fell within the scope of covered marina operations under the Classification Endorsement or not.

In August 2011, after the close of discovery, Essex moved for summary judgment a second time, without leave of court.  Once again, Essex's theory is that there are no genuine issues of material fact and that coverage to Water's Edge for the Foley's claims is barred by the Classification Endorsement.  Water's Edge (which is presently without counsel and subject to entry of default pursuant to an Order (doc. 49) entered by Magistrate Judge Milling back in July 2011) has not responded to the Essex's Renewed Motion for Summary Judgment; however, the Foleys have done so.[2]

---

[2] A threshold question is whether Essex can properly renew its summary judgment motion at all.  Contrary to the parties' apparent assumption, no federal litigant has an absolute right to bring multiple, piecemeal motions for summary judgment; rather, a successive Rule 56 motion may be filed only with the district court's authorization.  *See, e.g., Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 569 (11th Cir. 1990) ("Two motions for summary judgment may be ruled upon in the same case, particularly when … the district judge allows a second summary judgment motion."); *Siemens Westinghouse Power Corp. v. Dick Corp.*, 219 F.R.D. 552, 554 (S.D.N.Y. 2004) (explaining that courts do "not approve in general the piecemeal consideration of successive motions for summary judgment because parties ought to be held to the requirement that they present their strongest case for summary judgment when the matter is first raised") (citations omitted); *Sanders v. York*, 2008 WL 1925232, *4 (E.D. Cal. Apr. 30, 2008) ("The court will not allow defendants another 'bite at the apple' to file a second summary judgment motion addressing the merits of the remaining claims … as it would waste court resources and delay resolution of this action"); *McCabe v. Bailey*, 2008 WL 1818527, *1 (N.D. Iowa Apr. 4, 2008) (enforcing "one-summary-judgment-motion-per-party" rule "to conserve scarce judicial resources, prevent repetitive motions and forestall potential abuse").  The undersigned has observed the importance of not allowing parties to "treat their initial summary judgment motions as a 'dry run' which they would have an opportunity to redo or supplement – at considerable additional cost to opposing parties and at a considerable drain to scarce judicial resources – via a new Rule 56 motion later on to correct any deficiencies identified by opposing counsel or the court in processing the initial motion."  *Middlegate Development, LLP v. Beede*, 2011 WL 3475474, *11 n.26 (S.D. Ala. Aug. 9, 2011).  In its discretion, and in the absence of any objection from nonmovants, the Court will consider Essex's Renewed Motion for Summary Judgment, at least insofar as it relies on newly obtained evidence gleaned from discovery.

### II. Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

### III. Analysis.

Both sides devote considerable attention to arguments that are non-starters.[3] The Court will dispatch those red herrings before narrowing its focus to the specific issue properly raised on summary judgment, to-wit: Whether new evidence gleaned during the discovery process unequivocally establishes that the Foleys' claims against Water's Edge fall outside the scope of the Classification Endorsement, such that Essex owes no duty to defend Water's Edge under the subject insurance policy.

---

[3] Such detours into demonstrably weaker arguments in briefing this second motion for summary judgment are a compelling reminder of why the pursuit of successive Rule 56 motions is strongly disfavored by federal courts as an unproductive use of scarce judicial and litigant resources.

### A. The Foleys Have Standing to Be Heard on the Rule 56 Motion.

Essex urges the Court to disregard the Foleys' brief in response to its Rule 56 Motion, reasoning that they lack standing to be heard on the duty to defend issues. In Essex's words, "[t]he Foley's [*sic*] are not a party to the insurance contract between Essex and Water's Edge, they gain no benefit from requiring Essex to defend Water's Edge in the underlying suit, and their right to continue the personal injury claim against Water's Edge is not impacted." (Doc. 63, at 5.)

The Court finds this argument unpersuasive for several reasons. First, as a procedural matter, this contention is not properly raised because Essex articulated it for the first time in its reply brief. *See, e.g., Herring v. Secretary, Dep't of Corrections*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotes omitted).[4] Essex knew or should have known that the Foleys would oppose its present Rule 56 Motion (just as the Foleys opposed Essex's first Rule 56 Motion), yet chose to remain silent about the standing issue until its reply brief, after it was too late for the Foleys to be heard. Essex's election not to advance in its principal brief readily available arguments concerning the standing of the only active defendants in this case precludes it from propounding those contentions in its Reply.

Second, Essex's standing argument is a troubling reversal of its own position in this litigation. The Foleys did not intervene as defendants in this action. They did not worm their way into an insurer/insured dispute as uninvited guests via clever Rule 24 maneuvering. To the contrary, the Foleys are here because Essex compelled them to be here by naming them as defendants in this declaratory judgment action, which by plaintiff's own reckoning relates solely

---

[4] *See also Sharpe v. Global Sec. Int'l*, 766 F. Supp.2d 1272, 1294 n.26 (S.D. Ala. 2011) ("Because it is improper for defendant to raise this new argument in its reply brief, that argument will not be considered."); *Abrams v. Ciba Specialty Chemicals Corp.*, 663 F. Supp.2d 1220, 1232 n.16 (S.D. Ala. 2009) ("new arguments are impermissible in reply briefs"). The undersigned has outlined the virtues of this restriction as follows: "In order to avoid a scenario in which endless sur-reply briefs are filed, or the Court is forced to perform a litigant's research for it on a key legal issue because that party has not had an opportunity to be heard, or a movant is incentivized to save his best arguments for his reply brief so as to secure a tactical advantage based on the nonmovant's lack of opportunity to rebut them, this Court does not consider arguments raised for the first time in a reply brief." *Hardy v. Jim Walter Homes, Inc.*, 2008 WL 906455, *8 (S.D. Ala. Apr. 1, 2008). Those considerations loom large here.

to "a determination of the duty to defend." (Doc. 63, at 3.)  What's more, in naming the Foleys as defendants, Essex asserted in its Complaint that "[t]he Foleys … are proper parties to this action because their rights will be affected by the outcome of this declaratory action." (Doc. 1, ¶ 37.)  Like most insurers in declaratory judgment actions, Essex joined all known interested parties to obtain a global resolution of coverage issues that would be binding on all of them, rather than litigating these issues piecemeal across multiple lawsuits spanning separate interested parties.  For Essex now to state that the Foleys have no right to defend against the very action that Essex brought against them represents a remarkable about-face.  The Court declines plaintiff's apparent suggestion that the Foleys are obliged to participate in this litigation as defendants, on the one hand, even as they are forbidden from being heard as to Essex's claims for relief, on the other.  *See generally Casualty Reciprocal Exchange v. Wallace*, 189 So.2d 861, 864 (Ala. 1966) ("In the instant declaratory judgment suit, the Brights had the right to defend.  It was no concern of theirs whether Robert Wallace defaulted or not.  They (the Brights) were called to litigate.  Because another respondent failed to appear cannot affect their right to resist the suit."); *Progressive Specialty Ins. Co. v. E & K Trucking, Inc.*, 2010 WL 2383971, *6 n.9 (S.D. Ala. June 11, 2010) ("If Progressive believes that Dial has no cognizable legal right to be heard on the insurance coverage issues raised in the Complaint, then why did Progressive invite Dial to the party by suing him?").

Third, Essex's assertion that the Foleys cannot gain or lose from entry of Essex's requested declaration that it owes no duty to defend Water's Edge is inaccurate.  It is true enough that whether Essex has a contractual duty to defend Water's Edge in the underlying suit brought by the Foleys is fundamentally an issue between Essex and Water's Edge.  But the consequences of a ruling that Essex owes no duty to defend Water's Edge could be dire for the Foleys, particularly if that ruling is binding on the Foleys in subsequent proceedings (as Essex would presumably argue, on the theory that the Foleys were joined as defendants in this action and should be bound by coverage determinations herein).  After all, as recent Eleventh Circuit precedent confirms, a judicial determination of no duty to defend compels a finding of no duty to indemnify.  *See Trailer Bridge, Inc. v. Illinois Nat'l Ins. Co.*, --- F.3d ----, 2011 WL 4346579, *9 (11th Cir. Sept. 19, 2011) ("[A] court's determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify."); *see also National Cas. Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010) ("If an insurer has no duty to defend, it has no

duty to indemnify."); *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 595 n.3 (3rd Cir. 2009) ("A finding that the duty to defend is not present will preclude a duty to indemnify."); *Looney Ricks Kiss Architects, Inc. v. Bryan*, 761 F. Supp.2d 399, 404 (W.D. La. 2010) ("Since the duty to defend is greater than the duty to provide coverage and the issue of coverage can likewise be invoked by a third-party, then it presupposes that the duty to defend can be invoked by a third-party.  As such, LRK has standing to invoke Lafayette's duty to defend Lafayette's insureds.").  So a determination in this case that Essex owes no duty to defend Water's Edge in the underlying action would likely scuttle the Foleys' future attempts to have Essex pay any judgment they might obtain against Water's Edge in the underlying action.  Thus, if Essex were to be granted summary judgment on the duty to defend issue, the outcome could be catastrophic to the Foleys' ability to collect a judgment against Water's Edge.  The Foleys plainly have standing to take action to prevent such a catastrophe.[5]

### B.     Defendants Misread the May 5 Order.

Equally unavailing are the Foleys' contentions in their response to the summary judgment motion that two aspects of this Court's May 5 Order are fatal to Essex's renewed motion and, instead, dictate that summary judgment be granted in the Foleys' favor on all coverage issues.[6]

---

[5]  One other point bears mention.  In arguing that the Foleys lack standing, Essex relies on *Canal Ins. Co. v. Cook*, 564 F. Supp.2d 1322 (M.D. Ala. 2008).  In *Cook*, the injured plaintiff filed a motion for summary judgment seeking to force the insurer to defend the insured in the state court action; however, the district court denied that motion for lack of standing.  *See id.* at 1326-27.  But *Cook* is distinguishable, at least to the extent that the Foleys are simply opposing a declaration that Essex owes no duty to defend, rather than affirmatively seeking (as the injured plaintiff in *Cook* was) a declaration that the insurer possesses such a duty to defend.  The Foleys' interest is not in obtaining an affirmative ruling that Essex owes a duty to defend Water's Edge, but in forestalling a declaration that Essex owes no such duty to defend.  Stated differently, a finding that Essex owes a duty to defend Water's Edge says nothing about whether the narrower duty to indemnify exists (and therefore does not help the Foleys), but a finding that Essex owes no duty to defend to Water's Edge would be fatal to the duty to indemnify (and therefore would hurt the Foleys).  This is the point to which the May 5 Order alluded, when in the course of denying the Foleys' countermotion for summary judgment on the duty to defend issue, the Court questioned how the Foleys could have standing to seek such relief.  (*See* doc. 40, at 14-15.)  It is unfortunate that this judicial query as to the Foleys' misguided efforts to obtain summary judgment mutated into an erroneous argument by Essex that the Foleys (whom Essex haled into court herein) have no right to be heard on any issues joined in this litigation.

[6]  As to both of these arguments, the Foleys make conclusory statements that the May 5 Order entitles them to summary judgment.  Such a contention is puzzling at best, given (Continued)

In particular, the Foleys rely on portions of the May 5 Order concerning ambiguity and illusory coverage in the subject insurance policy. In making such arguments, however, the Foleys contort the meaning of that Order far beyond what its text might reasonably support.

### 1. *Ambiguity of the Essex Policy.*

The Foleys assert that the May 5 Order held that the insurance policy is ambiguous and that the meaning of the term "Marina Operations" is ambiguous. They further insist, without explanation, that Essex's present Rule 56 Motion is due to be denied, and a corresponding judgment entered for the Foleys on coverage issues, simply because the ambiguity must be resolved in the insured's favor.[7]

---

that the May 5 Order specifically found that the Foleys were not entitled to summary judgment on the Rule 56 motion they embedded in their response. Rather than explaining or acknowledging the findings in the May 5 Order that none of the legal determinations therein entitled the Foleys to summary judgment, the Foleys simply point to two aspects of that May 5 Order and state, in self-serving, conclusory fashion, that those portions of the Order, taken in isolation, require entry of final judgment in their favor. If the Foleys are intending to ask the Court to reconsider its denial of their Rule 56 Motion, they have not come close to satisfying the legal threshold for reconsideration under Rule 60. "In the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly." *Longcrier v. HL-A Co.*, 595 F. Supp.2d 1218, 1246 (S.D. Ala. 2008) (citations omitted). In that regard, the Supreme Court has confirmed that motions to reconsider "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008) (citation omitted); *see also Richardson v. Johnson*, 598 F.3d 734, 740 (11th Cir. 2010) ("A motion for reconsideration cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.") (citation and internal quotation marks omitted). The Court declines to reconsider its May 5 determination that the Foleys are not entitled to entry of summary judgment.

[7]  The Foleys take this argument several steps further in their Motion to Strike, wherein they assert that the May 5 Order's finding of ambiguity "effectively ended the Declaratory Judgment Action. … [B]ecause the Court already has ruled on the only issue raised in Plaintiff's Declaratory Judgment Action, namely that the subject policy language is ambiguous, … there is no issue left to adjudicate and the Court should rule in favor of coverage by entering a final order in favor of all Defendants. On May 5, 2011, when the Court found the subject policy language ambiguous, the Court determined the only issue in the case." (Doc. 61, at 2.) Presumably, it is this reasoning that animates the Foleys' present stance that the May 5 Order's finding of ambiguity necessitates denial of Essex's renewed summary judgment motion.

This argument substantially distorts the plain language of the May 5 Order. That ruling did <u>not</u> deem the terms "marina" or "marina operations" to be ambiguous. To be sure, the May 5 Order did find an area of ambiguity in the policy, but that ambiguity had nothing to do with whether Water's Edge's conduct did or did not constitute marina operations. Rather, the May 5 Order deemed the Classification Endorsement ambiguous as to its language that coverage "applies only to those operations specified in the application for insurance … and described … on the declarations of the policy." (Doc. 1, Exh. C, at 7.) As set forth in the May 5 Order, the ambiguity was that the Classification Endorsement could be read as either (i) extending coverage only to any operation that was <u>both</u> specified in the application <u>and</u> set forth in the declarations, or (ii) extending coverage to any operation that was <u>either</u> specified in the application <u>or</u> set forth in the declarations. The language of the policy could reasonably be read either conjunctively or disjunctively, and the parties lobbied for conflicting interpretations. (*See* doc. 40, at 7-9.) The May 5 Order resolved this ambiguity in the manner most favorable to the insured, as follows: "[A]s long as the Foleys' claims relate to Water's Edge operations that are <u>either</u> specified in the application <u>or</u> described under the 'classification' on the Policy's declarations, the duty to defend attaches." (Doc. 40, at 9.) Of course, there remained a critical dispute of fact over whether Water's Edge's conduct at issue in the underlying state lawsuit constituted "marina operations," in the customary, everyday meaning of the term. That fact dispute had no nexus to the ambiguity in the policy, but was rather the product of an incomplete and undeveloped record. It was for that reason (and not because of any ambiguity) that Essex's first motion for summary judgment was denied.

Thus, the ambiguity identified in the May 5 Order had nothing to do with the meaning of the term "marina operations." The Court construed the existing ambiguity in the manner most favorable to the insured, and still found genuine issues of fact for trial. In light of these circumstances, the Foleys' suggestion that the May 5 Order found the term "marina operations" ambiguous and that they are therefore entitled to prevail in this case because "there is no issue left to adjudicate" is inaccurate by a wide margin. Contrary to the Foleys' flawed interpretation, the May 5 Order did <u>not</u> resolve this action in its entirety. Even after construing the identified policy ambiguity in the insured's favor, the May 5 Order explained that there were remaining fact issues for trial as to whether Water's Edge's conduct in constructing the ramp at Tacky

-9-

Jack's fell within the scope of the plain, ordinary meaning of the term "marina operations." The Foleys cannot ignore or rewrite the May 5 Order to suit their purposes.

### 2.     *"Illusory Coverage" is Extraneous to the Remaining Issues.*

An alternative argument proffered by the Foleys is similarly flawed. Footnote 10 of the May 5 Order addressed an "illusory coverage" issue. The Foleys now reproduce that footnote in its entirety, profess their approval of it, and maintain (without elaboration) that footnote 10 mandates the denial of Essex's renewed Motion for Summary Judgment and the entry of judgment in the Foleys' favor.

A fair reading of footnote 10 simply cannot support the Foleys' position. That footnote says nothing about whether Water's Edge's conduct is or is not "marina operations," which is the central issue still pending in this case. Rather, the footnote explains that Essex's reading of the Classification Endorsement (as requiring that a certain operation be listed both in the policy application and on the declarations page in order to be covered, rather than in one location or the other) would run afoul of the prohibition on illusory coverage. But the footnote made clear that it was unnecessary to reach the "illusory coverage" issue at all because the May 5 Order had already rejected Essex's interpretation of the Classification Endorsement on ambiguity grounds. As such, the illusory coverage issue had no bearing on the outcome of the May 5 Order.

Nor does the issue of illusory coverage have anything at all to do with the narrow questions presented on summary judgment. The May 5 Order determined the meaning of the Classification Endorsement, so there is no further room for debate in this action as to what that endorsement means. The remaining question for trial is whether Water's Edge's conduct does or does not constitute an operation listed in the application for insurance (which recited "marina" as the sole operation for which coverage was sought). The illusory coverage issue is extraneous to that question and relates to other arguments that the Court has already decided. It in no way supports the Foleys' position that the renewed motion for summary judgment should be denied.[8]

---

[8] At best, the Foleys assert that the Classification Endorsement "completely swallows up the Commercial General Liability Policy, for which Water's Edge paid a separate premium." (Doc. 62, at 5.) They do not explain this position in any way, leaving a host of unanswered questions. Nor does their "completely swallows up" argument make sense; after all, as construed in the May 5 Order, the Classification Endorsement specifically allows CGL coverage for "marina operations" as well as the specific operations listed on the declaration page, so it obviously does not "completely swallow up" all such coverage. In any event, the Court is
(Continued)

### C.     *Genuine Issues of Fact Remain.*

At the core of Essex's Renewed Motion for Summary Judgment is its contention that newly discovered facts in discovery reveal that Water's Edge did not construct the ramp outside the Tacky Jack's restaurant as part of its marina operations.[9] To be sure, Essex concedes that there "could be a question of fact that cannot be resolved through summary judgment" as to whether the area where the ramp was constructed was part of the marina complex that Water's Edge was overseeing. (Doc. 58, at 11.)[10] Nonetheless, Essex asserts that this new evidence unambiguously establishes that Water's Edge did not construct the ramp in furtherance of its marina oversight responsibilities.

The evidence adduced in discovery on this point is as follows:  A Water's Edge employee named Francis LaPointe observed a beer deliveryman having difficulty wheeling his hand cart into the Tacky Jack's restaurant at the marina after the restaurant parking lot was renovated. (LaPointe Dep. I (doc. 58, Exh. C), at 32.)  In particular, LaPointe saw that "[t]here was no way for anyone to wheel their delivery down to where it had to go" because the previous ramp had been cut off. (*Id.* at 33.)  The very day that LaPointe observed this problem, he constructed the

---

not tasked with developing arguments that a summary judgment litigant has chosen to prevent in only the barest of skeletal forms. *See, e.g., Harris v. Hancock Bank*, 2011 WL 1435500, *2 n.4 (S.D. Ala. Apr. 14, 2011) ("Federal courts generally do not develop arguments that the parties could have presented but did not."); *Pears v. Mobile County*, 645 F. Supp.2d 1062, 1081 n.27 (S.D. Ala. 2009) ("The parties … cannot be heard to balk if the undersigned does not perform their research and develop their arguments for them.").

[9]     It is proper to consider facts elicited in discovery in this matter in assessing whether Essex does or does not owe Water's Edge a duty to defend. *See, e.g., Hartford Cas. Co. v. Merchants & Farmers Bank*, 928 So.2d 1006, 1010 (Ala. 2005) (in deciding whether allegations of underlying complaint show covered action or occurrence, "the court is not limited to the bare allegations of the complaint … but may look to facts which may be proved by admissible evidence") (citations omitted).

[10]    In its reply brief, Essex backtracks on this admission by arguing that it has presented "uncontroverted evidence … that the ramp was built in an area that was not part of the marina complex." (Doc. 63, at 8.)  Having taken this issue off the table as a ground for seeking summary judgment in its principal brief, plaintiff cannot be heard to place it back on the table in its reply. At a minimum, this would be unfair to the Foleys, who would effectively be deprived of an opportunity to be heard on that issue by virtue of Essex's reversal of position in its reply.

new ramp at Tacky Jack's on his own, and without assistance from others. (*Id.* at 33-34.) When LaPointe built that ramp, he worked for Water's Edge at the marina as a "[f]orklift driver; marina employee." (*Id.* at 10.)[11] LaPointe was "on the clock" for Water's Edge when he constructed that ramp. (*Id.* at 49.) Amanda Stubbs, the Water's Edge marina manager, testified that she did not instruct LaPointe to construct such a ramp and that she does not know why he did it. (Stubbs Dep. (doc. 58, Exh. A), at 90, 92.) This is consistent with LaPointe's own testimony that "[n]o one" told him to construct that ramp; rather, he indicated, "I decided to build what I had felt was a temporary ramp." (LaPointe Dep. II (doc. 58, Exh. D), at 44; LaPoint Dep. I, at 34.)

To be clear, the issue presented on summary judgment is not whether Water's Edge may be held legally responsible for LaPointe's actions for purposes of the Foleys' claims asserted against it. The doctrines of respondeat superior, vicarious liability, and agency – and their potential application to this case – have not been briefed by the parties; therefore, the Court cannot and will not undertake to present and resolve such arguments for them. *See, e.g., Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) ("district courts cannot concoct or resurrect arguments neither made nor advanced by the parties"). The Court makes no findings and expresses no opinions as to whether Water's Edge may be held liable to the Foleys for LaPointe's conduct of building the ramp. Rather, the sole question here is whether the construction of that ramp constitutes "marina operations" for purposes of Classification Endorsement on the subject insurance policy.

Essex's position that the construction of the ramp does not constitute marina operations, as a matter of law, rests on the following facts: (i) the ramp was built solely for the use of Tacky Jack's restaurant operation; (ii) Water's Edge had no contractual or other obligation to build the ramp for Tacky Jack's; (iii) LaPointe built the ramp on his own, without being directed to do so; and (iv) after Foley slipped and fell, it was Tacky Jack's (and not Water's Edge) that conducted a remedial investigation and undertook to improve the ramp. These facts, taken together, may well suffice to convince a jury that Water's Edge is not responsible for the dangerous condition on the

---

[11] Essex suggests that LaPointe's true job title was that of "dock attendant," but identifies no record evidence to support such a classification. At any rate, Water's Edge "dock attendants" are acutely involved in day-to-day marina operations, with duties including "fueling boats, ice, taking ice to boats, moving boats from the storage area … out into the water and then picking them back up and putting them away," and so on. (Stubbs Dep., at 34.)

ramp that culminated in Foley's injury. Indeed, that seems to be thrust of Essex's argument, as its summary judgment brief is filled with assertions that "Water's Edge was not responsible for the ramp" and that LaPointe acted "outside the scope of his employment." (Doc. 58, at 13.) If the question presented was whether Water's Edge bears any liability to the Foleys, or if Essex's renewed Rule 56 Motion had been bolstered by a discussion of applicable legal principles relevant to vicarious liability (rather than simply conclusory statements that LaPointe was acting beyond the scope of his employment), then perhaps Essex's motion might stand on a different footing. But, again, that is simply not the way this case is postured on summary judgment.

At the risk of belaboring the point, the critical insurance coverage question in this case is whether the conduct for which the Foleys are suing Water's Edge in state court amounts to "marina operations." The facts on that point are subject to differing interpretations. After all, the actor in question was a Water's Edge dock attendant, whose job duties (by Water's Edge's own admission) centered on marina activities such as fueling, stocking and moving boats housed at the marina. A reasonable finder of fact could find that the entire purpose of Water's Edge hiring and employing LaPointe was to perform marina operations. Moreover, this dock attendant built the ramp for a marina tenant of Water's Edge, and did so while he was on the clock for Water's Edge. A reasonable factfinder could infer from these facts that LaPointe's construction of the ramp on Water's Edge's behalf for a tenant of the marina complex was indeed a "marina operation" within the scope of the Classification Endorsement. Stated differently, Water's Edge owned and/or operated the marina facility where the Tacky Jack's restaurant was located. A Water's Edge dock attendant – whose entire function was to engage in marina operations – built a ramp to assist that marina tenant during working hours for which he was being compensated by Water's Edge. Under the circumstances, it would be entirely reasonable to infer that his activities on Water's Edge's behalf were indeed "marina operations," within the customary, everyday meaning of the phrase. In other words, a reasonable construction of these facts is that Water's Edge is being sued in state court for the acts of its employee in engaging in marina maintenance and oversight activities on Water's Edge's behalf. The Court cannot and will not construe facts and inferences in the light most favorable to Essex for purposes of evaluating Essex's summary judgment motion, and therefore cannot discard the reasonable inference from record facts that the Foleys are suing Water's Edge for the latter's marina operations, which lie squarely within the coverage provisions of the Classification Endorsement.

Because Essex's Renewed Motion for Summary Judgment essentially asks this Court to disregard adverse inferences that may readily be drawn from record facts, and because a reasonable fact finder could conclude from this record that the Foleys' claims against Water's Edge do indeed relate to covered marina operations, entry of summary judgment in favor of Essex is inappropriate.[12]

## IV.  Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1. The Foleys' Motion to Strike Plaintiff's Renewed Motion for Summary Judgment (doc. 61) is **denied** as improper;

2. Plaintiff's Renewed Motion for Summary Judgment (doc. 58) is **denied** because there are genuine issues of material fact;

3. The Court notes that Water's Edge failed to respond to the Order (doc. 49) entered by Magistrate Judge Milling on July 25, 2011, requiring it to retain new counsel for this action on or before August 8, 2011. Water's Edge is **ordered** to **show cause**, on or before **November 10, 2011**, why default should not be entered against it as a sanction for its persistent failure/refusal to comply with court orders. If Water's Edge fails to respond in a timely manner, default will be entered against it immediately; and

4. The Clerk of Court is **directed** to mail a copy of this Order to Water's Edge, LLC**,** c/o Billy Parks, 8971 Foxtail Loop, Pensacola, FL  32526-3235.

DONE and ORDERED this 31st day of October, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[12] The same conclusion attaches to the Foleys' conclusory, unsupported suggestion that they are entitled to summary judgment in the declaratory judgment action. A factfinder could reasonably conclude from examination of these facts that LaPointe's renegade activities were outside the scope of Water's Edge's marina supervision and oversight functions, but were instead gratuitous acts divorced from Water's Edge's marina operations on the premises. The Foleys have not shown otherwise, but have simply asked in the most cursory fashion for summary judgment to be granted in their favor, without making anything approaching the necessary factual and legal showing to support same.